Alan Lindsey Jr. is here for the appellate. Kevin Michael Hodges for the appellees. And Mr. Lindsey, you may begin when you're ready. May it please the court. I'm Alan Lindsey. I'm a lawyer in Milton, Florida. And I'm counsel along with the Falcon Firm on the Christopher Causey case and other similar situated beach cleanup workers. The original settlement to these thousands, I guess, of claims provided that the injured beach cleanup workers with an opportunity to have a rapid financial recovery of $60,700, less than 25% attorney fees, and it was $700 in there provided for costs. It provided BP with closure and it provided the federal court system with relief from what might have been 10,000 individual lawsuits. There was no restriction on diagnosis date in the original settlement. In other words, the offer, the contract to these individual workers did not require them to have a definite diagnosis date. It did require them to have a manifestation date of while they were on the beach or within a few hours thereafter. Mr. Lindsey, the district court granted summary judgment because there were repeated misrepresentations in this case regarding the workman's compensation claims that were made or denied. I didn't realize that was a reason. This man technically never filed a worker's comp claim. He never filed one? His lawyer sent a letter. You were the lawyer. No, sir. I was not the lawyer. You signed it. Tom Condon was the lawyer. He was a worker's comp lawyer. No. The document has your signature on it and you're named as the lawyer. Which document, Judge? Well, several. The workman's comp complaint that he filed lists you as his lawyer. I've never seen that document. Well, it's in the record of the case. Sir, I'm not a worker's comp lawyer. I didn't file that document. I didn't have anything to do with that document. Tom Condon was a worker's comp lawyer. I'm his lawyer in the BP case. I understand that, but he lists you as the lawyer and you signed it and Condon handled the case because he's the comp lawyer. Isn't that what happened? A lot of these cases were referred to Condon in Pensacola. Yes, sir. Okay. And he handled them. And there's one document and everybody has a long conversation or meeting with the physician and he sends you a copy on the document. Okay. Yes, sir. Okay. Well, and so throughout this litigation there's a representation, as I understand it, that because he never filed or pursued a worker's comp claim. It's checked no. He didn't pursue a worker's comp claim for the ocular injury. But no, that just asks whether he pursued one at all. Okay. And I don't know even knowing in his argument here about that that he, to what extent he filed. I know Mr. Condon sent a letter that was a settlement. He settled one. Yes, he settled one, that's for sure. Your argument is that he never filed one but that he settled one? Is that the argument that you're making? That's his perception of it because he didn't know he filed one. Well, let me ask you this now. There's a release though and he settled his worker's comp claim resolving any and all claims. That's what the release says. Arising for injuries arising from the beach cleanup. So I'm not sure we understand if he exercised an election that he had and why he's not bound by that election to go to the worker's comp route. Okay. And who does that release benefit? It benefits B2S and anybody who worked for or under B2S. That's the purpose for the election of remedies in order to avoid compensation for the same injuries twice. Yes, sir, for later manifested physical conditions. Do we agree on that? For later manifested physical conditions, that's what it says. Well, that's, I mean, this wasn't a later manifested condition. He settled the claim because he had eye problems and now he's seeking compensation in a personal injury case for eye problems. We certainly disagree that that's the fact. He didn't settle it because of poor vision? That was the basis for his worker's comp claim? It was not the basis. He specifically excluded eyes. It was not mentioned in Mr. Condon's letter. And you know, you've seen and somebody referred to Mr. Condon's visit with Dr. Harbor. Dr. Harbor diagnosed this man with serious eye conditions, actually beyond . . . That was in the compensation proceeding. Judge, I don't understand that that is the case at all. Well, I'm looking at Exhibit G. It's a Condon document and you've got a copy. He copies you and it's a conference with Dr. Harbor. And this is before the workman's comp claim is settled. And the conjunctivitis is all over the document. You got the document. Yes, sir, I'm sure I do. Well, there's no question you got it because you signed a lot of pleadings here. The same thing happened in the Quarles case. You remember the Quarles case, Ogles case? Judge . . . What did the judge do in the Ogles case? Okay, Mr. Ogles actually did receive money for that specified condition. I understand that and the judge granted summary judgment on the same grounds as she did in this case. And she was correct. But we beg to differ with her decision on this case because he never received compensation for his eye problems. Mr. Condon was aware . . . What did he receive compensation for in the worker's comp case? What did he receive it for? He had . . . What was the injury? I'm sorry. What was the injury that he received compensation for? There were several injuries referred to in Mr. Condon's letter which I think he had some rashes and so forth and I can't remember what they all were. But ocular was left out on purpose. There was no reference to his eyes? No, sir. We have a letter . . . I'm looking at the complaint you signed and Cousy signed and it says specified condition, chronic conjunctivitis and chronic dry eye syndrome. That's . . . That's what he was paid for. No, sir. He was not paid for that. He was a settlement in October of 2013. This document was filed ahead of time. This was in February . . . Yes, sir. . . . 2013. Yes, sir. You're correct. And you signed it. I did. Allen Lindsay, Jr. I did. I'll sign it again. Okay. But that's for his eye injury. His eye injury wasn't compensated. It says chronic conjunctivitis and chronic dry eye syndrome and not only that, the letter you got from Condon, which is the conference with Dr. Harbour, is loaded with eye problems. Same compensation case. Maybe I can't read, but it's pretty clear to me. Well, Judge, it's clear to us too, but we just don't see eye to eye. And if the law was clear, we wouldn't need very many lawyers and judges. Let me address some of the things that's come up. After his manifestation, the settlement agreement was reached on April 16th, 2012. Mr. Causey's condition was properly diagnosed by Dr. Harbour on September 8th, 2012. On April 2nd, 2013, the workers' comp lawyer, Mr. Condon, met with Dr. Harbour, who is a neuro-ophthalmologist. On October 14th, 2013, Mr. Condon settled Mr. Causey's potential worker comp claim for $4,252.06. And obviously, the ocular claim was left out. It's not in the letter. You've said that twice now. You have a very broad release to this workers' compensation settlement, but you've said the ocular injury was left out. What is your evidence that the ocular injury was left out of the workers' compensation settlement? Mr. Condon's letter. That you would concede that there is no language in the settlement, the workers' compensation settlement agreement? I'm saying that Mr. Condon's letter listed several problems, and these people have generally had several problems. It listed several problems. Mr. Condon's letter to whom when? I'm sorry? Mr. Condon's letter to whom when? To the workers' compensation attorney. Before the settlement was entered into? Yes. Okay, but the settlement agreement of itself does not exclude any injuries from the release. It does not include it. It very broadly says, the claimant acknowledges that the settlement and release constitutes an election of remedies and constitutes a complete release of all actions against the release parties arising out of any workers' compensation accident in any way related to personal injury while claimant was employed by P2S, including but not limited to personal injury claims asserted or that could be asserted in the Deepwater Horizon MDL. And the release parties are whom? Well, you're aware of the settlement agreement and the release. You tell me. You've got a broad release. P2S. So what's your? That's who Mr. Causey released. And at the time he signed all of that, the October 14, 2000, I'm sorry, the Judge Barbier had not entered the order which converted the language of the settlement to mean that anybody who had not been diagnosed before April 16, 2012, it made them later manifested. Even though they were prior manifested and signed the declaration, my eye problems began in July 2010 while I was working on the beach. Would you agree that you cannot, that the settlement would not permit a below claim for the same claim that was presented in Workman's Comp? I would agree that if he had gotten paid for eye. I'm looking at an order by the same district court in about 20 cases with the same problem and you were representing the plaintiffs. Yes. All of them were discharged because the Workman's Comp proceeding covered the exact same claim as the below claim. And if the Workman's . . . You agree with that? Yes, sir. Okay, this is another one of those cases. If the Worker's Comp claim covered eyes in Mr. Causey's case, I wouldn't be here. What it covers is any and all claims. That's what it covers. And that inured the P2S, not BP. And that also at the time, and this has been overlooked by almost everybody maybe, at the time Mr. Causey and Mr. Condon did this work, Judge Barbier had not converted the language in the settlement to relate back and say even though you actually got sick in July, you now become a later manifested problem. And that's where you look at the prohibition against having the claim, having a Worker's Comp versus a claim in the settlement. That's where the prohibition is, later manifested physical condition. You cannot have the same claim later manifested as the same claim that is in a Workman's Comp proceeding. Would you agree with that? Yes. Okay. And that is why the district court granted summary judgment. I understand it. And in every case where the district court granted summary judgment, where the client was trying to double dip, no appeal. There's about 40 of those, and you were the plaintiff's lawyer in every one of them. Well, Judge, I'm trying to say they didn't get paid for their eyes. They got paid for other things. They had rashes. They had breathing problems. Lots of comorbidities relating to toxins, and they didn't get paid for their eyes. All right. You've reserved some time, Mr. Lindsey. Thank you. We'll hear from Mr. Hodges. Good morning, Your Honors. May it please the court. Kevin Hodges. Hodges, am I misreading the record? I'm sorry, Your Honor. Am I misreading the record? In what respect, Your Honor? I don't believe you are. I didn't hear you say anything that I believe was a misreading of the record. I'm sorry. Did I not understand your question, Judge? May it please the court. This appeal involves an application of the plain terms of the Deepwater Horizon Medical Benefits Class Settlement Agreement, known as the MSA. The MSA resolved personal injury claims of spill cleanup workers and coastal residents who alleged that they were injured by exposure to oil and other substances released by the spill or used in cleanup activities. The MSA provides different procedures for class members to seek compensation for alleged injuries. This appeal involves what is known as the back-end litigation option or BELO lawsuit, which is the exclusive remedy for class members, such as Mr. Causey, the appellant, who claim exposure-related injuries that were first diagnosed after April 16th of 2012. These injuries are known as later manifested physical conditions, or LMPCs. Mr. Causey filed his BELO complaint. In this case, in November of 2018, he claimed chronic conjunctivitis and chronic dry eye syndrome that he claims were caused by exposure to toxic chemicals while employed as a spill... Mr. Hodges, could you keep your voice up a little bit or pull the mic? Yeah, I'm sorry, Your Honor. He claims those conditions were caused by exposure to toxic chemicals while employed as a spill cleanup worker on the Florida coast in 2010. The MSA establishes and defines the BELO lawsuit process. It identifies the parties who can be sued. It identifies the claims and defenses that can be asserted. So he exercised the workers' compensation option. That was his election. And what was that injury for? It was for all exposure-related injuries that occurred while he performed beach cleanup work, which he alleges in this lawsuit was between June 7th of 2010 and mid-July of 2010. He makes a good point that the first report of injury or illness, which is the document that was filed with the Workers' Compensation Office, it does not make any reference to eye conditions. Your Honor... His eye condition was not diagnosed until after that document was filed. And why didn't that create a genuine issue with that as to whether he filed a workers' compensation claim? He filed one. A couple responses to that, Your Honor. His workers' compensation attorney, Mr. Condon, sent a letter dated April 17th of 2012 in which he claimed that his beach cleanup work was the cause of his injuries, and he listed several injuries. He says his symptoms included breathing problems, rash on hands and feet, nausea, sinus problems, hair loss, headaches, staph infection, and poor vision. If you look at the report that was filed, what has clearly happened is someone has copied the beginning of that list of symptoms from Mr. Condon's letter and copied it into the form, and they have not listed the last three conditions, headaches, staph infection, and poor vision. The way that the workers' compensation system works in Florida is the employee makes a report to the employer. The employer transmits that report of incident to its insurer, unless it's self-insured, and then the insurer fills out that claim form and submits it to the Division of Workers' Compensation. At that point, the claim is filed, and we see in this case that there is a case. There's actually a workers' compensation case, and we know that from the settlement because the settlement is on a written settlement agreement and it is on a caption that reflects a case number before the State of Florida Division of Administrative Hearings, Office of the Judge of Compensation Claims in Pennsylvania. What if you have no knowledge that you have an eye problem until after the workers' compensation case is settled? I mean, you're construing that release rather broadly in order to avoid a situation like that. He didn't know about his eye condition. What if he didn't know about that he had conjunctivitis until later? Judge, in this case, he did know about his eye condition because his diagnosis was in September of 2012, according to his allegations, and the settlement, the workers' compensation settlement, was in October of 2013. We also have a report of a meeting between Mr. Condon and Dr. Harbour . . . And they list conjunctivitis line after line in that document? They list Dr. Harbour, who is the diagnosing doctor, both in the workers' compensation case and in this case, listed optic atrophy, dry eye syndrome, visual field loss, and toxic optic neuropathy. So, Mr. . . . as a district . . . Optic atrophy, dry eye syndrome. This is what the doctor is telling Condon. And Condon is telling . . . sends a copy of this to Mr. Lindsay. That's correct, Your Honor. Okay. Conjunctivitis, dry eye syndrome, chronic irritation, and possible mild optic neuropathy. Very little optic atrophy, mild dry eye syndrome. Dry eye syndrome and chronic conjunctivitis. Possible optic nerve damage, chronic conjunctivitis. Burning eyes, dry eye syndrome, conjunctivitis. Dry eye syndrome, dry eye syndrome, significant chronic conjunctivitis. And it goes on and on and on. Isn't that what was in the workmen's comp proceeding? Your Honor, this document that you're referring to, which is at page 141 of the corrected appendix, refers to thirty-three plaintiffs and workers' compensation proceedings. This is document 35-7? Correct, Your Honor. Okay. And that was presented, as I understand it, in the workmen's comp proceeding? That's correct. These are the diagnoses that were presented. And then Condon then worked out a settlement based on that? That's correct. Is that not so? That's correct, Your Honor. And so the district court, Judge Rogers said, the BELO claim is the exact same claim. What Judge Rogers said, Your Honor, was that the condition had been diagnosed before the settlement was entered. The settlement was broad. It was a release of any and all claims that could be asserted based on exposure to toxic chemicals during the cleanup work in 2010. That's what was released. And those are the same claims that are brought in this case. That's right. And then she goes on to say that Mr. Causey misrepresented by didn't reveal all this. On four separate occasions, Your Honor. That is correct. And the consequence of that, there were four different times when Mr. Causey, either under oath or penalty of perjury, either did not disclose or denied that he had submitted a workers' compensation claim. Did not disclose what's in this document. That's correct, Your Honor. All right. And the consequence of that is there are no disputed facts in this record. So we have submitted the release, which releases any and all claims, with no carve-out for eye conditions. And there are some carve-outs in that release, but not for eye conditions. And Mr. Causey, rather than providing, for example, his own testimony or his own declaration or that of Mr. Condon to explain why these eye injuries were not included, instead took the tactic of simply denying that the workers' compensation case ever existed. And so the result of that is he has never disputed the facts that BP has put into evidence. And he did this on four separate occasions. He did it in his notice of intent to sue form, which is the first filing that you make to the claims administrator to start the BELO lawsuit process. He answered the question, no, did he make a claim for benefits under the workers' compensation law? He did it in his plaintiff profile form, which is the multi-district litigation court's initial disclosure requirement under its case management order for BELO lawsuits. Again, he said no to the question, have you filed a workers' compensation claim? And Mr. Lindsey signed that document, did he not? The plaintiff profile form, I believe Mr. Lindsey was involved in the plaintiff profile form. He did it in the interrogatories in this case, and he did it in his deposition testimony below where he said no, I have not filed a workers' compensation claim. Now, on appeal, he's changed his position, and he said yes, I have reached a workers' compensation settlement, but while he may dispute that the conditions claimed in this case were covered by his workers' compensation claim, the consequence is he's offered no evidence to support his bare assertions. And on summary judgment, the court is not required to credit mere arguments or mere inferences or speculation. There must be some showing, some evidentiary showing, that's made by the non-moving party in order to support the fact that a genuine issue of fact exists. How much did he recover on his workers' comp claim? He recovered about $4,200 on his workers' comp claim. He was making $560 a week. Under the Florida's compensation statute, if you are temporarily partially disabled, which I think is the category that would fit Mr. Causey because he never stopped working, you're only entitled to two-thirds of your... Well, if he did release, it's unfortunate for him because now he has some serious eye problems that he's not going to be able to recover for in the event that you prevail on this appeal. He was diagnosed, Your Honor, with eye problems before he entered the settlement. He didn't have the same eye problems then that he's got now. Well, the dry eye condition was specifically diagnosed by Dr. Harber at the time he was pursuing his workers' compensation claims, and that was part of the workers' compensation case, Your Honor. So we think that it is covered, and we think it is certainly covered by the scope of the release that he signed. The district court found that Mr. Causey's workers' compensation claims had included all conditions... Is he legally blind now? I'm sorry?  Not to my knowledge, Your Honor. He continues to work. He's continued to work from 2011 to the present at a hospital. He reported that. He has reported in his interrogatory responses that he's not incapacitated from working. So I don't believe that is the case. The district court found that his workers' compensation claim included all conditions that allegedly were caused by exposure to oil and dispersant while he was performing beach cleanup work, that his eye conditions were known to him and his attorney at the time he was pursuing the workers' compensation claim, that the workers' compensation claim submitted by his attorney had included eye conditions, that Mr. Causey had been diagnosed with his eye conditions prior to settling his workers' compensation claims, and that there was no evidence in the record to indicate that Mr. Causey had attempted to exclude these conditions from his workers' compensation claim or from his settlement. Your Honor, we submit that the record is undisputed. The MSA's election of remedies provision, which is finding unambiguous and should be enforced, controls here because an election of remedy was made. A class member who seeks compensation must choose either workers' compensation law or the below lawsuit process. If he chooses to seek a workers' compensation recovery, he cannot also pursue a below claim, which is what he's tried to do here. There's no dispute that Mr. Causey did not comply with the MSA because he pursued and settled a workers' compensation claim for his alleged exposure-related injuries before he filed this below lawsuit. The district court's decision correctly applied the expressed terms of the MSA to the undisputed facts, and we ask that that decision be brought up. All right. Thank you, Mr. Hodges. Thank you, Your Honor. Mr. Lindsey, you have reserved some time for rebuttal. Thank you. As to the release, I'm not going to re-plow those grounds. It didn't—he didn't get paid for eyes, and he didn't—and BP wasn't a part of the release, and this should be considered, or it's not a valid release. The changing of the settlement agreement deprived many workers of the benefit of the bargain. If you affirm this ruling, then you have affirmed that the additional change to it was when Judge Barbier's order is to be treated retroactively. Now, in criminal laws, that's post facto and not allowed, but remember this, please. At the time Mr. Causey was going through that process, it was allowed. It wasn't disallowed. It was after he became, by Judge Barbier's later offer, that he—it was afterwards that he became a class member with a later manifested physical problem when he went through this process. They intentionally withheld eyes. Mr. Causey was aware he had an eye problem. Dr. Harbor told Mr. Conlon he's got a terrible eye problem, and he was in the process already. We had already started the process to come into the Deepwater Horizon settlement, so please don't include eyes in that now because that'll mess our case up. It'll destroy our case, and so they didn't include eyes, and it may have destroyed it anyway, right? So far it has. So I ask you to consider the fact that the timeline is important. It should not be ignored. The workers' comp settlement was in October 2013 before he was a later manifested— class member. At that time, he was prior manifested. Manifested and diagnosed have been conflated, and it's— Well, thank you for your attention. I appreciate that, and we appreciate any consideration that you can give to this matter. All right. Thank you, Mr. Lindsay and Mr. Hodges.